**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOSES REFUGIO MANCILLA,<br><br>      Petitioner,<br><br>  v.<br><br><br>MARTIN BITER,<br><br>      Respondent. | Case No. 1:13-cv-01724-BAM-HC<br><br>ORDER DISREGARDING PETITIONER'S PURPORTED REFUSAL TO CONSENT TO MAGISTRATE JUDGE JURISDICTION (DOC. 10)<br><br>ORDER VACATING ASSIGNMENT OF THE DISTRICT JUDGE (DOC. 11)<br><br>ORDER DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS WITHOUT LEAVE TO AMEND (DOCS. 1-2)<br><br>ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DIRECTING THE CLERK TO CLOSE THE CASE |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court is the petition, which was filed on October 17, 2013, and transferred to this Court from the United States District Court for the Central District of California on October 25, 2013.

///

///

1

I.  Consent to the Jurisdiction of the Magistrate Judge

    A.  Background

At the time he filed his petition in the Central District, Petitioner filed an election regarding consent to proceed before a Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b).  (Doc. 3.)  The election document was a form containing notice to the parties that they could voluntarily consent to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in the case, including dispositive matters and entry of final judgment; however, it was further stated that such consent was entirely voluntary, and absent such consent, a Magistrate Judge would continue to decide only non-dispositive matters, and on other matters would report and make recommendations to a District Judge. (Id.)  In the portion of the form in which Petitioner was directed to check the box indicating his decision regarding consent, a check was placed in a box next to the statement, "Yes, I voluntarily consent to have a United States Magistrate Judge conduct all further proceedings in this case, decide all dispositive and non-dispositive matters, and order the entry of final judgment."  (Id.)  The form was dated October 9, 2013, and was signed, "Mancilla Moses."  (Id.) The same words set forth in the same order appear as the signature on the petition that Petitioner filed simultaneously with the consent form.  (Doc. 1, 8.)

After the matter was filed in the Central District, the case was referred to a Magistrate Judge.  (Doc. 4.)  After the case was transferred to this District, the Clerk sent to Petitioner documents of a type customarily sent out with newly filed cases, including an order that included a form for Petitioner to indicate whether or not

he consented to the jurisdiction of the United States Magistrate

Judge.[1]   In response, Petitioner returned the form, having selected

the option that stated, "The undersigned declines to consent to a

United States Magistrate Judge and requests random reassignment to a

United States District Judge."  (Doc. 10.)

B.  Analysis

Although a party to a civil case in a federal district court

generally has a constitutional right to proceed before an Article

III judge, the right may be waived, and thus a party may consent to

the jurisdiction of a United States Magistrate Judge to conduct all

proceedings in a case.  Dixon v. Ylst, 990 F.2d 478, 479-80 (9th

Cir. 1993); Pacemaker Diagnostic Clinic of America, Inc. v.

Instromedix, Inc., 725 F.2d 537, 541 (9th Cir. 1984) (en banc),

cert. den. 469 U.S. 824 (1984).  Once a civil case is referred to a

Magistrate Judge under section 636(c) pursuant to the consent of the

party, the reference can be vacated by the Court only "for good

cause shown on its own motion, or under extraordinary circumstances

shown by any party...."  28 U.S.C. § 636(c)(4); Fed. R. Civ. P.

73(b)(3); Dixon v. Ylst, 990 F.2d at 480.  There is no absolute

right to withdraw consent to proceedings before a Magistrate Judge.

Id.  It is correct not to vacate a reference where a party has

consented in a signed writing to Magistrate Judge jurisdiction, the

party fails to make a motion to vacate the reference that is

supported by a showing of extraordinary circumstances, and the Court

does not sua sponte find good cause for withdrawal of consent.   Id.

At the time the present case was transferred to this district,

---

[1] Because Petitioner had already indicated his unqualified consent to the
jurisdiction of the Magistrate Judge to conduct all further proceedings in his
case, the issuance of this order was redundant and confusing.

Petitioner, who was the only party who had appeared in the action, had consented to the jurisdiction of the Magistrate Judge to proceed with the case to final judgment.  Thus, the case proceeded before the undersigned Magistrate Judge pursuant to Local Rule 301, which provides that upon the consent of all appearing parties, Magistrate Judges are specially designated to conduct any and all proceedings in any civil action, including the conduct of trials and the entry of final judgment, in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(a)(5) and (c).  Further, Appendix A to the Local Rules of the United States District Court, Eastern District of California expressly provides that in a habeas corpus action, after notice regarding consent to assignment has gone out, if not all named parties have appeared but all who have appeared have consented, the Magistrate Judge shall act in the action pursuant to 28 U.S.C. § 636(c) until the action is reassigned to a District Judge.  App. A (k)(3), (4).

Here, the Court finds that Petitioner consented to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting his consent in a writing signed by Petitioner and filed on October 17, 2013.

Further, Petitioner consented to Magistrate Judge jurisdiction and then sought to withdraw his consent without any motion or showing of any basis for withdrawal of consent.  No good cause for withdrawal of consent appears.  Under the circumstances, the Court concludes that Petitioner's purported withdrawal of consent was ineffective, and it must be disregarded.

Because there was no basis for assignment or reassignment of

4

1   the case to a District Judge, the assignment of the case to District

2   Judge Lawrence J. O'Neill must also be vacated.

3       II.   <u>Screening the Petition</u>

4       Rule 4 of the Rules Governing § 2254 Cases in the United States

5   District Courts (Habeas Rules) requires the Court to make a

6   preliminary review of each petition for writ of habeas corpus.  The

7   Court must summarily dismiss a petition "[i]f it plainly appears

8   from the petition and any attached exhibits that the petitioner is

9   not entitled to relief in the district court...."  Habeas Rule 4;

10  <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see also</u>

11  <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule

12  2(c) requires that a petition 1) specify all grounds of relief

13  available to the Petitioner; 2) state the facts supporting each

14  ground; and 3) state the relief requested.  Notice pleading is not

15  sufficient; rather, the petition must state facts that point to a

16  real possibility of constitutional error.  Rule 4, Advisory

17  Committee Notes, 1976 Adoption; <u>O'Bremski v. Maass</u>, 915 F.2d at 420

18  (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 75 n.7 (1977)).

19  Allegations in a petition that are vague, conclusory, or palpably

20  incredible are subject to summary dismissal.  <u>Hendricks v. Vasquez</u>,

21  908 F.2d at 491.

22      Further, the Court may dismiss a petition for writ of habeas

23  corpus either on its own motion under Habeas Rule 4, pursuant to the

24  respondent's motion to dismiss, or after an answer to the petition

25  has been filed.  Advisory Committee Notes to Habeas Rule 8, 1976

26  Adoption; <u>see</u>, <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43 (9th Cir.

27  2001).

28      A petition for habeas corpus should not be dismissed without

leave to amend unless it appears that no tenable claim for relief

can be pleaded were such leave granted.  Jarvis v. Nelson, 440 F.2d

13, 14 (9th Cir. 1971).

Petitioner, an inmate of the Kern Valley State Prison serving

an undisclosed sentence, challenges 1) a finding made by prison

staff in a prison disciplinary proceeding that Petitioner possessed

a deadly weapon in violation of California regulations, and 2) the

sanction of forfeiture of 360 days behavioral credit imposed as a

result of the violation.  Petitioner asserts that he was exercising

outside of his cell from the time the weapon, a razor blade, was

delivered to his cell inside a library book, until after the razor

was discovered in a cell search.  Petitioner raises the following

claims in the petition: 1) he was denied his right to due process of

law under Wolff v. McDonnell, 418 U.S. 539 (1974) and Cal. Code

Regs., tit. 15, § 3320[2] to present documentary evidence (an isolation

log and inmate segregation record) in his defense or in mitigation

of the charges; 2) the failure of the investigative employee to

gather information specific to the charge (the aforementioned log

and record) pursuant to Cal. Code Regs. § 3318 violated Petitioner's

right to a fair hearing under Cal. Code Regs. § 3315 and the due

process clauses of the state and federal constitutions; 3) the

failure of the hearing officer to call unspecified witnesses with

knowledge or information regarding the time the librarian was in

Petitioner's housing unit, who Petitioner contends are necessary to

fact finding under Cal. Code Regs. § 3315, violated Petitioner's

right to a fair hearing and due process; 4) inaccurate factual

statements made by witnesses violated Petitioner's right to a fair

---

[2] All further references to the California Code of Regulations are to title 15.

hearing protected by Cal. Code Regs. § 3320 and the state and federal due process clauses; and 5) the failure of correctional employees to enforce several mandatory regulations governing prisoner safety and security, enforcement of the laws, and inspection of cells violated his rights to due process under the state and federal constitutions.  (Doc. 2 at 1, 13-21.)

Petitioner grieved the issues and presented them to the California courts.  The Superior Court of the State of California, County of Kern, issued a reasoned decision denying the petition, rejecting Petitioner's procedural complaints, and finding that some evidence supported the decision.  (Doc. 2, 57-59.)  The intermediate appellate court and the California Supreme Court denied Petitioner's petitions for writ of habeas corpus.  (Id. at 61, 63.)

III.  Background

On September 23, 2011, Petitioner was found to have possessed a razor blade on August 15, 2011, in violation of Cal. Code Regs. § 3006(a), while Petitioner was confined at La Palma Correctional Center in Eloy, Arizona.  (Doc. 2, 29-37, 57.)

On the day in question, Sgt. Belloc searched Petitioner's cell and found a razor blade outside of its sheath and inside a library book that was found on Petitioner's bed with a library slip indicating that the book was checked out to Petitioner.  Librarian Heartshorne indicated that the librarian delivered the books to Petitioner's cell, but Sgt. Belloc did not see the librarian deliver the books to Petitioner's cell.  Petitioner stated to the reporting employee that he had received the book from the librarian.  (Id. at 31.)  Petitioner admitted at the disciplinary hearing that he had occupied the cell for a month; he did not remember when he had

7

received the book, but he thought it was that day.  Librarian
Heartshorne stated at the hearing that at that time, books were
being delivered to the unit on Wednesdays; the razor was found on a
Monday, August 15.  (Id. at 35.)

In finding Petitioner guilty, the hearing officer relied on the
reports of the officer and Petitioner's admissions that he occupied
the cell and received the book.  (Id. at 36.)  On appeal, the
Department of Corrections and Rehabilitation interviewed
Heartshorne, who stated that the books were hand-delivered to
Petitioner's cell before 7:30 a.m., well before Petitioner was
released to the exercise yard.  (Id. at 43, 49.)

Petitioner also submits a document that appears to reflect
Belloc's response of March 13, 2012, to an interview request made by
Petitioner, who sought Belloc's confirmation that on August 15,
2011, during the cell search conducted by Belloc, there were only
two books in Petitioner's cell.  (Doc. 2, 47.)  Belloc stated that
he recalled that while Petitioner was "out to rec," the librarian
passed out two books and placed them on the table.  He also states
that th e books did have Petitioner's name slip in them; however, it
is not clear whether Belloc is referring to the books delivered to
Petitioner's cell or the books found in Petitioner's cell, or both.
(Id.)

Petitioner denied having knowledge of the presence of the razor
and contends that logs and prison records will show that he was out
of his cell for a period of time encompassing the delivery of the
book by the librarian to Petitioner's cell and the discovery of the
razor in the book during the cell search.  Petitioner alleges that
he was in the exercise cage of the administrative segregation unit

8

1   (ASU) from 7:30 a.m. to 10:50 a.m.; the cell search occurred at 8:27

2   a.m.  (Id. at 3.)

3        IV.   State Law Claims

4        Because the petition was filed after April 24, 1996, the

5   effective date of the Antiterrorism and Effective Death Penalty Act

6   of 1996 (AEDPA), the AEDPA applies to the petition.  Lindh v.

7   Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484,

8   1499 (9th Cir. 1997).

9        A district court may entertain a petition for a writ of habeas

10  corpus by a person in custody pursuant to the judgment of a state

11  court only on the ground that the custody is in violation of the

12  Constitution, laws, or treaties of the United States.  28 U.S.C. §§

13  2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7

14  (2000); Wilson v. Corcoran, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010)

15  (per curiam).

16       Federal habeas relief is not available to retry a state issue

17  that does not rise to the level of a federal constitutional

18  violation.  Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16

19  (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Alleged

20  errors in the application of state law are not cognizable in federal

21  habeas corpus.  Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002).

22  The Court accepts a state court's interpretation of state law.

23  Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996).  In a habeas

24  corpus proceeding, this Court is bound by the California Supreme

25  Court's interpretation of California law unless it is determined that

26  the interpretation is untenable or a veiled attempt to avoid review

27  of federal questions.  Murtishaw v. Woodford, 255 F.3d 926, 964 (9th

28  Cir. 2001).

Here, there is no indication that the state courts' interpretation of state law was associated with an attempt to avoid review of federal questions.  Thus, this Court is bound by the state courts' interpretation and application of state law.

Each of Petitioner's claims is based in part on state law. Petitioner raises numerous grounds concerning alleged procedural rights to information, evidence, and hearing procedures based on violations of, or failures to enforce, state regulations and the state constitution.  To the extent that Petitioner's claims are based on state law, whether it be the state constitution or state statutes, regulations, or case law, Petitioner fails to state facts entitling him to habeas relief because in this proceeding, relief is reserved for violations of federal law.  Thus, to the extent that Petitioner's claims are based on state law, they must be dismissed.

Further, because the defects in the state claims are based on not a dearth of factual allegations, but rather the nature of the claims as based on state law, Petitioner could not allege tenable claims even if leave to amend were granted.

Accordingly, Petitioner's state claims will be dismissed without leave to amend.

V.   <u>Documentary Evidence</u>

Procedural due process of law requires that where the state has made good time subject to forfeiture only for serious misbehavior, then prisoners subject to a loss of good-time credits must be given advance written notice of the claimed violation, a right to call witnesses and present documentary evidence where it would not be unduly hazardous to institutional safety or correctional goals, and a written statement of the finder of fact as

1  to the evidence relied upon and the reasons for disciplinary action

2  taken.  Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974).  Further,

3  if the inmate is illiterate, or the issue is so complex that it is

4  unlikely that the inmate will be able to collect and present the

5  evidence necessary for an adequate comprehension of the case, the

6  inmate should have access to help from staff or a sufficiently

7  competent inmate designated by the staff.  However, confrontation,

8  cross-examination, and counsel are not required.  Wolff, 418 U.S. at

9  568-70.

10     In addition to the foregoing minimal standards of procedural

11 due process, it is established that where good-time credits are a

12 protected liberty interest, the decision to revoke credits must be

13 supported by some evidence in the record.  Superintendent v. Hill,

14 472 U.S. 445, 454 (1985).  The Court in Hill stated:

> We hold that the requirements of due process are satisfied
> if some evidence supports the decision by the prison
> disciplinary board to revoke good time credits. This
> standard is met if "there was some evidence from which the
> conclusion of the administrative tribunal could be
> deduced...." United States ex rel. Vajtauer v. Commissioner
> of Immigration, 273 U.S., at 106, 47 S.Ct., at 304.
> Ascertaining whether this standard is satisfied does not
> require examination of the entire record, independent
> assessment of the credibility of witnesses, or weighing of
> the evidence. Instead, the relevant question is whether
> there is any evidence in the record that could support the
> conclusion reached by the disciplinary board. See ibid.;
> United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134,
> 44 S.Ct. 260, 260-261, 68 L.Ed. 590 (1924); Willis v.
> Ciccone, 506 F.2d 1011, 1018 (CA8 1974).

25 Superintendent v. Hill, 472 U.S. at 455-56.  The Constitution

26 does not require that the evidence logically preclude any

27 conclusion other than the conclusion reached by the

28 disciplinary board; rather, there need only be some evidence in

11

order to ensure that there was some basis in fact for the

decision.  Superintendent v. Hill, 472 U.S. at 457.

Petitioner contends that his right to due process was violated
by the absence of specific documentation, namely, an isolation log
and inmate segregation record which Petitioner contends would show
that the librarian delivered the book during the time Petitioner was
away from his cell.  However, the record of the disciplinary
proceedings shows that Petitioner indicated that he was satisfied
with the investigation performed by the investigative employee, and
he waived his right to call his witnesses; there is no indication
that Petitioner ever sought to obtain or introduce these records.
(Doc. 2, 30, 34-35.)

Further, the procedures mandated by Wolff v. McDonnell do not
include any obligation on the part of the prison authorities to
introduce any documentary evidence.  The hearing included the
admission of relevant evidence concerning the delivery of the books;
however, the absence of specific documents from the hearing does not
merit relief because there is no legal requirement under federal law
that the prison authorities produce any specific evidence.  Although
Petitioner was housed in a segregated housing unit and could not
collect evidence, he has not shown that he requested this specific
evidence be collected or presented on his behalf either at or in
advance of the hearing.

Petitioner's invocation of his right to present a defense is
inapposite in a disciplinary proceeding except to the extent it is
guaranteed by Wolff v. McDonnell.  See, Wolff, 418 U.S. at 556.  In
Wolff, the Court balanced the individual prisoner's interest in fair
and accurate fact finding with the penological interests of the

12

prison authorities in maintaining the safety of inmates and the
security of the institution and in facilitating the rehabilitation
of the inmates.  The question before the Court was whether the
"minimum procedural requirements" required by the Constitution for
revocation of probation or parole applied to prison disciplinary
proceedings.  Id. at 559-60.  After examining all the competing
interests, id. at 555-64, the Court determined that fewer
protections of individual rights were required by the Due Process
Clause in prison disciplinary proceedings, id. at 563-72.
Petitioner has set forth no basis in fact or law to render
additional protections necessary in the present case.

Accordingly, the Court concludes that Petitioner has not shown
that the failure to introduce the documentary evidence violated his
right to due process of law.  The facts alleged by Petitioner do not
entitle him to relief in this proceeding pursuant to § 2254.  Thus,
Petitioner's claim should be dismissed.

It appears that a full documentary record of the disciplinary
proceedings, including the appeals, is before the Court.  Thus, even
if leave to amend were granted, Petitioner could not allege a
tenable due process claim for relief based on the failure to
introduce the documents.

Accordingly, Petitioner's due process claim concerning
documentary evidence will be dismissed without leave to amend.

VI.   <u>Investigative Employee</u>

Petitioner alleges that the failure of the investigative
employee to gather the log and the segregation record violated his
right to a fair hearing guaranteed by the due process clause.

1    Prison disciplinary proceedings are not part of an adversary

2   criminal prosecution, and the full panoply of rights due a defendant

3   in criminal proceedings does not apply.  _Wolff_, 418 U.S. at 556.

4   Thus, the Court in _Wolff_ concluded that a prisoner facing

5   disciplinary charges has no right to counsel.  However, the Court

6   stated the following:

7         Where an illiterate inmate is involved, however, or [where]
          the complexity of the issue makes it unlikely that the inmate
8         will be able to collect and present the evidence necessary
          for an adequate comprehension of the case, he should be free
9         to seek the aid of a fellow inmate, or if that is forbidden,
          to have adequate substitute aid in the form of help from
10        the staff or from a sufficiently competent inmate designated
          by the staff.
11

12  _Wolff_, 418 U.S. at 570.

13       Here, Petitioner was literate, with a reading level described

14  as "4.0," and he spoke English.  (Doc. 2, 34.)  Petitioner was given

15  an investigative employee, who prepared a report after interviewing

16  many witnesses with information pertinent to the charges, including

17  Petitioner, the officer who searched the cell, and the librarian.

18  The issues were not complex.  In short, Petitioner was given all the

19  assistance required by the minimum procedural requirements set forth

20  in _Wolff._  Although Petitioner was in segregated housing, his

21  housing status did not prevent him from making specific requests of

22  the investigative employee or other prison staff for particular

23  documentation.  The Court has described the core or "touchstone" of

24  due process as the protection of the individual against arbitrary

25  action by the government.  _Wolff v. McDonnell_, 418 U.S. at 558.  In

26  view of all the protections afforded Petitioner, Petitioner has

27  failed to show any likelihood of a due process violation in the form

28  of unfairness based on arbitrary governmental action.

14

With respect to the issue of the adequacy of the investigative employee's investigation, the fact that there might have been a violation of the state's more protective regulation concerning the scope of the employee's obligation does not establish a due process violation.  Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994).

The Court concludes that with respect to the assistance of the investigative employee, Petitioner has not alleged facts that point to a real possibility of constitutional error.  Petitioner has not shown a violation of the Wolff standards.  Further, because full documentation of the disciplinary proceedings is before the Court, Petitioner could not allege a tenable due process claim concerning the investigative employee if leave to amend were granted.

Accordingly, Petitioner's claim concerning the investigative employee will be dismissed without leave to amend.

VII.  Hearing Officer's Failure to Call Witnesses

Petitioner contends that his rights to a fair hearing and due process were violated by the hearing officer's failure to call unspecified witnesses with information concerning the timing of the librarian's delivery of the book and Petitioner's absence from the cell for exercise.  Petitioner relies on state regulations that permit a hearing officer to present witnesses who are necessary to the finding of fact even if the prisoner does not request them.

The Wolff requirements do not include any obligation on the part of the hearing officer to present particular evidence or witnesses.  As previously noted, the fact that a hearing officer has failed to comply with more generous state standards does not result in a violation of due process of law.

To the extent that Petitioner complains throughout the petition

of the absence of evidence due to the conduct of the investigative

employee, the hearing officer, or the witnesses themselves in any of

foregoing, present, and following claims analyzed herein, Petitioner

may be asserting that there was an absence of some evidence to

support the decision.  However, as the hearing officer and reviewing

prison authorities concluded, the guilty finding was supported by

the discovery of the razor blade in the book checked out by

Petitioner as reflected in the rules violation report, Petitioner's

own admissions that the cell was his and he was unsure of even the

day on which he received the book, and evidence from the librarian

that supports a conclusion that the book was delivered before 7:30

a.m. and thus long before Petitioner was absent from his cell for

exercise.

In determining whether some evidence of the violation supported

the finding, the Court does not make its own assessment of the

credibility of witnesses or reweigh the evidence; however, the Court

must ascertain that the evidence has some indicia of reliability

and, even if meager, is "not so devoid of evidence that the findings

of the disciplinary board were without support or otherwise

arbitrary."  Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987)

(quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  The

record reflects a sustained effort on the part of the prison

authorities to obtain particularized information from the librarian

regarding the delivery.  The information from the librarian may have

been subject to varying interpretations, but one such interpretation

was that the book was delivered before Petitioner left his cell for

exercise.  Belloc's recollection of the events was inconsistent, and

thus it is not necessary that his later statement of his

16

recollection be credited.

The Court concludes that the factual matter relied on by the prison authorities had some indicia of reliability and constituted the required "some evidence" to support the decision.  To the extent that any of Petitioner's claims may be understood to mount a contrary contention, Petitioner's contention is rejected.

In summary, the hearing officer's failure to call witnesses has not been shown to have resulted in any unfairness in the hearing process or to have violated Petitioner's right to due process of law.  Petitioner's allegations and the full record of the disciplinary proceedings do not suggest a real possibility of a constitutional violation of Petitioner's right to procedural due process.

Accordingly, Petitioner's claim based on the hearing officer's failure to call witnesses will be dismissed without leave to amend.

VIII.   Inaccurate Witness Statements

Petitioner alleges that his right to due process and a fair hearing were violated by statements given by the librarian and Officer Belloc, which he characterizes as inaccurate and false.

In considering this claim, the Court is mindful that Petitioner received adequate notice of the charges, an investigative employee to help prepare for the hearing, a hearing at which Petitioner was present and made a statement, and a statement of the reasons for decisions made at the institutional and appellate levels. Petitioner does not contend that in the course of the disciplinary proceeding, he suffered independent procedural due process violations.

The general status of the pertinent law has been reviewed in a

decision of this Court as follows:

> The Second Circuit has held in the context of an action
> brought pursuant to 42 U.S.C. § 1983 that "[a]lthough
> prisoners are entitled to be free from arbitrary action
> and conduct of prison officials, the protections against
> arbitrary action 'are the procedural due process
> requirements as set forth in Wolff v. McDonnell.'"
> Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir.1986)
> (quoting Hanrahan v. Lane, 747 F.2d 1137, 1140
> (7th Cir.1984)). Prisoners have "no constitutionally
> guaranteed immunity from being falsely or wrongly
> accused of conduct which may result in the deprivation
> of a protected liberty interest," but they do have
> "the right not to be deprived of a protected liberty
> interest without due process of law." 808 F.2d at 951.
> See also Sprouse v. Babcock, 870 F.2d 450, 452
> (8th Cir.1989) (finding inmate's claims based upon
> falsity of charges brought by a prison counselor
> did not state a constitutional claim). Therefore,
> "[w]hile in no way condoning "trumped up charges"
> or the use of "falsified documents" in any official
> proceeding, even the filing of false disciplinary charges
> is not itself a due process violation, provided the
> procedural due process requirements of Wolff are observed."
> Deadmon v. Grannis, No. 06cv1382-LAB (WMC), 2008 WL
> 595883, *10 (S.D.Cal. Feb. 27, 2008); see also Saenz v.
> Spearman, No. 1:09-cv-00557-GSA-YNP (PC), 2009 WL 2365405,
> *8 (E.D.Cal. July 29, 2009) ("The Due Process Clause does
> not provide a guarantee that Plaintiff will be free from
> fabricated accusations of disciplinary violations.").
> Cf. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173,
> 3 L.Ed.2d 1217 (1959) (a criminal conviction obtained
> using knowingly perjured testimony violates due process).

Campo v. Prosper, 2009 WL 3112425, *6 (No. CIV S-06-1662-DAD-P,

E.D.Cal. Sept. 23, 2009).

Here, Petitioner received the minimal procedural protections

required.  There is no basis for an inference of any intentional

falsification of evidence, retaliation, or other wrongful intent;

rather, it appears that Petitioner has shown at most that there is a

possibility that some of the factual information on which the

18

finding was based was inaccurate.  These allegations do not entitle Petitioner to relief in a proceeding pursuant to 28 U.SC. § 2254. Petitioner's claim concerning inaccurate statements and false evidence thus should be dismissed.

Considering the nature of Petitioner's allegations and the fact that complete documentation of the disciplinary process is already before the Court, Petitioner could not state a tenable claim for relief based on false evidence even if leave to amend were granted.

Accordingly, the claim will be dismissed without leave to amend.

IX.   Failure to Enforce State Regulations

Petitioner's final claim is that his loss of good time credit was the result of the failure of prison staff adequately to enforce state regulations concerning inmate safety, enforcement of laws, and inspection of cells.  Petitioner alleges that the matter being delivered to his cell was not adequately inspected.

As previously noted, Petitioner has no federally protected right to enforcement of state regulations.  To the extent that Petitioner might be attempting to allege that he was subject to cruel or unusual punishment or dangerous prison conditions, such allegations would be cognizable not in a habeas proceeding pursuant to 28 U.S.C. § 2254, but rather in a civil rights action pursuant to 42 U.S.C. § 1983.  While a habeas corpus petition is the correct method for a prisoner to challenge the legality or duration of his confinement, Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991) (quoting Preiser v. Rodriguez, 411 U.S. 475, 485 (1973)), a civil

rights suit under 42 U.S.C. § 1983 is the proper method for a prisoner to challenge the conditions of that confinement, <u>McCarthy v. Bronson</u>, 500 U.S. 136, 141 42 (1991); <u>Preiser</u>, 411 U.S. at 499; <u>Badea</u>, 931 F.2d at 574; Advisory Committee Notes to Habeas Rule 1, 1976 Adoption.

Because of the nature of Petitioner's allegations, and in view of the fact that Petitioner received all process due in connection with the disciplinary proceedings, Petitioner's claim will be dismissed without leave to amend because even if leave to amend were granted, Petitioner could not allege a tenable due process claim.

In summary, Petitioner has failed to allege facts entitling him to relief in this proceeding.  Petitioner's petition will be dismissed without leave to amend.

X.   <u>Certificate of Appealability</u>

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right.  § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right or that jurists of reason would find it debatable whether the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. at 483-84.

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was wrong or debatable among jurists of reason.  Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed.  Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.  Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, the Court will decline to issue a certificate of appealability.

XI.  Disposition

Accordingly, it is ORDERED that:

1) Petitioner's purported refusal to consent to Magistrate Judge jurisdiction is DISREGARDED; and

2) The assignment of District Judge Lawrence J. O'Neill is VACATED; and

3) The petition for writ of habeas corpus is DISMISSED without leave to amend; and

4) The Court DECLINES to issue a certificate of appealability; and

5) The Clerk is DIRECTED to close the case because this dismissal terminates the proceeding in its entirety.

IT IS SO ORDERED.

Dated:   **November 15, 2013**              /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE